**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DANNY GENE WOLFE, #16680-045,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 11-cv-215-GPM** |
| | ) | **(Consolidated with No. 11-cv-450-GPM)** |
| **HARVEY G. LAPPIN,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

Plaintiff Danny Gene Wolfe, an inmate in Big Spring Federal Correctional Institution, Texas, brings this action for deprivations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff's claims are based in part on events that occurred while Plaintiff was housed at the United States Prison at Marion, Illinois. Plaintiff is serving a 180 month sentence for sexual exploitation of children, concurrent to a 108 month sentence for coercion/enticement of a minor, after a guilty plea in the Western District of Missouri, Case No. 04-cr-3011. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from

such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

Initially, a note about the procedural history of this action is in order. Plaintiff first filed this case on March 17, 2011, with an "Affidavit in support of IFP hardship statement and filing of Plaintiff's claim in the Southern District of Illinois" (Doc. 1 in Case No. 11-215). The Court

construed that affidavit as a complaint.  In it, Plaintiff referenced another complaint he had

previously filed in the Northern District of Texas (*Wolfe v. Beltran*, No. 11-cv-0015 (N.D. Tex.,

filed Jan. 27, 2011)).[1]  Some of the claims in the Texas case were severed and transferred to the

Northern District of Illinois.[2]  Plaintiff requested this Court to obtain that complaint for him,

presumably so it could be filed in the instant case.  This was not done, as it is beyond the scope

of this Court's duties or authority.  Plaintiff then filed a new 44-page complaint in this Court,

which was docketed in Case Number 11-cv-450 (Doc. 1).  When it was discovered that Plaintiff

was bringing the same claims in 11-cv-450 as he had originally raised in the instant case (No. 11-

cv-215), the Court sua sponte consolidated the cases into 11-cv-215.  Document 1 in 11-cv-450

is now the operative complaint, and all references below to "Document 1" shall be to that

document filed in Case Number 11-cv-450, unless specifically indicated otherwise.

Plaintiff began his incarceration in the Federal Bureau of Prisons ("BOP") in April 2004

(Doc. 1, p. 4).  At that time, he had been wearing dentures for fifteen years following extraction

of all his teeth (Doc. 1-1, p. 1, No. 11-cv-450).  However, when Plaintiff came to prison, he did

not have his dentures.  He claims that BOP policy did not allow his family to send him the

---

[1] This Texas case, against the same Defendant Beltran as named herein, remains pending.  (*See* Doc. 1, p. 12).

[2] *Wolfe v. Ross*, Case No. 11-cv-1075 (N.D. Ill., filed Feb. 15, 2011).  The Court has consulted the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) to verify the status of Plaintiff's cases in other jurisdictions.  *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).  The Northern District of Texas also transferred severed claims to the appropriate courts in Arkansas and California: *Wolfe v. Morley*, Case No. 11-cv-0028 (E.D. Ark., filed Feb. 16, 2011); *Wolfe v. Wooten*, Case No. 11-cv-1421 (C.D. Cal., filed Feb. 16, 2011).  All of these cases are now closed.  Plaintiff voluntarily dismissed the Northern District of Illinois and the Arkansas cases, and the California case was dismissed, apparently without prejudice, when Plaintiff failed to provide his inmate trust account documentation.  Defendants Ross, Morley, and Wooten, named in these cases, are the same parties as named herein.

dentures he owned before going to prison (Doc. 1, p. 8).  Therefore, he was dependent on prison

officials to provide him with a new set of dentures.  Despite Plaintiff's many requests, he did not

get dentures for six and a half years, until October 20, 2010 (Doc. 1, pp. 5-6).  Plaintiff claims the

Defendants intentionally denied his ongoing requests to be fitted with dentures.  For the entire

time that he went without dentures, Plaintiff had to eat without being able to properly chew his

food.  This caused him to endure daily pain and suffering; choking; sore and bleeding gums;

digestive problems including constipation, hemorrhoids, and rectal bleeding that led to

dependence on laxatives and lazy bowel syndrome (a condition that Plaintiff alleges is now

permanent); dramatic weight loss; disfigurement and mental anguish (Doc. 1, pp. 8, 15, 24, 40-

41).

       Plaintiff has been transferred from one BOP institution to another several times since

April 2004.  He began his incarceration in Illinois, where he was seen by Defendant Ross, the

chief dental officer at MCC Chicago.  He then was moved to FCC Forest City in Arkansas,

where Defendant Morley, the chief dental officer, saw him in August 2006.  Plaintiff next went

to USP/SCP Lompoc, California.  He saw Defendant Wooten, the Lompoc dental officer, on

January 5, 2007, who recommended a prosthodontic (denture) evaluation (Exhibit C, Doc. 1-2, p.

3, 11-240).  At that time, he had gone thirty-three months without dentures (Doc. 1, p. 5).

       Plaintiff arrived at USP-Marion on or about October 1, 2007, and remained there until

approximately April 15, 2009.  During this eighteen month period, Marion Defendants Warden

Bledsoe, Jane Doe Warden, John Doe Chief Dental Officer, and John Doe Health Services

Administrator all failed to provide Plaintiff with dentures.  Plaintiff claims his name was on the

BOP waiting list for dentures well before he arrived at Marion, and that BOP officials had

regularly told him he was "on the list" in response to his inquiries (Doc. 1, p. 22; Doc. 1-1, p. 2 in Case No. 11-450).  He also states that the Marion Defendants, as well as Defendants Nalley (the BOP regional director) and Lappin (the Director of the BOP), failed to ensure that dental care was available for him or other Marion inmates, because they had no dentist working there until the last two weeks of Plaintiff's eighteen-month stay in Marion (Doc. 1, p. 5).  Moreover, the John Doe Chief Dental Officer as well as the John Doe Health Services Administrator at Marion told Plaintiff that he would not get his prescribed dentures while he remained at Marion (Doc. 1, pp. 11-12).

Next, Plaintiff was moved to Big Spring FCI, Texas, on May 7, 2009, where he remains (Doc. 1, p. 43).[3]  After renewing his requests for dentures to Defendant Beltran (the Big Spring chief dental officer) and filing requests for administrative remedies with Defendants Martinez (Big Spring Health Services Administrator) and Edenfield (Big Spring Warden), Plaintiff finally got dentures on October 20, 2010 (Doc. 1, p. 24).  He claims that neither the Marion Defendants nor the BOP Defendants informed the Big Spring Defendants that Plaintiff had already been on a waiting list for dentures for some time before his transfer to Big Spring.  Instead, the Big Spring denture waiting list reflected only that Plaintiff made his request for dentures as of October, 2009 (Exhibits BB and DD, Doc. 1-2, pp. 28-29, in Case No. 11-450).  Plaintiff contends that had the Defendants followed  BOP policies, his place on the denture waiting list would have been maintained throughout his various transfers, and his treatment would not have been delayed for six years (Doc. 1, pp. 28, 30).

---

[3] Plaintiff does not indicate where he was from the time he left Marion on approximately April 15, 2009, to May 7, 2009, when he arrived in Big Spring FCI.

Plaintiff seeks compensatory and punitive damages for each day he was denied dentures, as well as injunctive relief and a transfer to another institution (Doc. 1, pp. 41-42).

## Discussion

### Introduction - Deliberate Indifference to Serious Dental Needs

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). However, in certain instances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition.

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). In addition, a condition that is so obvious that even a lay person would easily recognize the

necessity for a doctor's attention is also considered a "serious" medical need.  *Id.*

Plaintiff's condition meets several of the criteria described in *Gutierrez*.  The failure to treat him, *i.e.*, provide him with dentures, inflicted unnecessary pain as well as further injury, not only to his gums, but also to his digestive system.  The inability to chew food normally had significant effects on Plaintiff's daily activities of consuming and digesting food, causing him to choke and develop constipation, as well as other problems.  The Seventh Circuit has recognized that dental care is "one of the most important medical needs of inmates."  *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (inmate who alleged he suffered from bleeding gums, headaches, disfigurement, and inability to chew food without dentures stated a serious medical need).  In that case, allegations that an inmate denied his dentures could not chew his food, making eating difficult, and that he suffered bleeding, headaches, and disfigurement, were held to state a serious medical need.  *Id.*  Thus, Plaintiff's allegations suffice to meet the objective showing that he had a serious medical condition.  The remaining question is whether he has sufficiently alleged deliberate indifference on the part of the various Defendants.

As to the subjective component of a deliberate indifference claim, the Supreme Court has stated:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . .  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer v. Brennan,* 511 U.S. 825, 842 (1994).  Furthermore, a delay in providing medical treatment "may constitute deliberate indifference if the delay exacerbated the injury or

unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (discussing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976)); *Gayton v. McCoy,* 593 F.3d 610, 619 (7th Cir. 2010); *see also Farrow v. West*, 320 F.3d 1235, 1243-44 (11th Cir. 2003) (inmate who was forced to wait fifteen months for dentures, during which he suffered pain, bleeding gums, and weight loss, stated an Eighth Amendment claim).

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm.  *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000) (officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering")*.*  The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.  *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques).

Plaintiff has brought claims against a number of Defendants, several of whom do not reside in this District.  Each subgroup of Defendants – those in USP-Marion, the national BOP officials, and the Defendants in Chicago, Arkansas, California, and Texas, shall be examined in turn.

**Marion Defendants**

Plaintiff was an inmate in Marion from October 1, 2007, until about April 15, 2009.  This action was filed on March 17, 2011, within two years of the time Plaintiff left Marion.  He alleges that Defendants John Doe Chief Dental Officer and John Doe Health Services

Administrator not only knew that Plaintiff needed dentures, but knew that he had previously been prescribed dentures and placed on a waiting list.  Plaintiff states he requested these Defendants to provide him with dentures, and asked them about his status on the waiting list.  He also made regular visits to the health care unit for treatment of his constipation and other problems caused by his lack of dentures.  However, both these Defendants specifically told Plaintiff that he would not get his prescribed dentures during his incarceration at Marion, which lasted for eighteen months.  At the pleadings stage, Plaintiff has sufficiently alleged deliberate indifference to his serious medical need for dentures against Defendant John Doe Chief Dental Officer and Defendant John Doe Health Services Administrator.

Plaintiff also claims that Defendant Warden Bledsoe, and his successor Defendant Jane Doe Warden, not only knew about the lack of dental care available to Plaintiff, but bore direct responsibility for the failure to provide care, because they had no dentist on staff to care for the inmates, and knew that dentures were not being provided.  Additionally, Plaintiff asserts that these Defendants interfered with his ability to obtain dentures in a timely manner after his next transfer to Big Spring in Texas, because they did not forward the records showing that Plaintiff had already been on a waiting list to receive dentures before his transfer.

While a prison warden cannot be held liable in a § 1983 case based merely on his or her supervisory position, *see Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001), Plaintiff has alleged more than *respondeat superior* liability.  He asserts that the Defendant Wardens, at a minimum, had knowledge of or consented to the unconstitutional conduct of the subordinate Defendants who failed to provide needed dental care to Plaintiff.  If these allegations prove to be true, the Defendant Wardens each had sufficient personal involvement to be responsible for the

violation, even though they may not have participated directly in the unconstitutional conduct. *Chavez*, 251 F.3d at 652; *McPhaul v. Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")). Accordingly, Plaintiff's claims against Defendant Bledsoe and Defendant Jane Doe Warden are not subject to dismissal at this stage.

**Bureau of Prisons Defendants**

Plaintiff claims that Defendant Lappin (the national BOP director) and Defendant Nalley (a BOP regional director) were aware that USP-Marion had no dentist to care for inmates there. He adds that this was in violation of BOP policy, which requires one dentist to care for every 1,000 inmates, at a time when more than 1,200 inmates were housed in USP-Marion (Doc. 1, p. 22). Other policies promulgated by these Defendants, according to Plaintiff, prevented him from obtaining his own dentures which his family could have sent him, thus making him dependent on the prison to provide him with replacement dentures. In addition, Plaintiff asserts that BOP policies provide that an inmate who is on a waiting list for medical services such as dentures, is to maintain his place on that list when he is transferred to a different institution (Doc. 1, p. 28). This was not done in Plaintiff's case. Plaintiff alleges that these Defendants knew that dental care at Marion was inadequate, yet did nothing to rectify the situation, and failed to follow their own policies that would have led to more timely treatment of his serious dental needs. These allegations, taken together, state a claim for personal involvement of Defendants Lappin and

Nalley sufficient to prevent dismissal at the pleadings stage.

**Defendants Residing Outside the Southern District of Illinois**

Plaintiff seeks to prosecute his claims in this action against Defendant Ross, whose allegedly unconstitutional conduct took place in Chicago in 2004; Defendant Morley, whose conduct occurred in Arkansas in 2006; and Defendant Wooten, who treated Plaintiff in Lompoc, California, before October 2007.  None of these Defendants nor the acts in question have any connection to the Southern District of Illinois.  As outlined above, Plaintiff's claims against these Defendants were severed from Plaintiff's pending claim in the Northern District of Texas (*Wolfe v. Beltran*, No. 11-cv-0015 (N.D. Tex., filed Jan. 27, 2011)), and transferred to the respective districts where those Defendants reside.  Each of these claims has since been dismissed.

Where a federal claim is not based solely on diversity of citizenship, that claim may be brought "only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(b).  Under this provision, the claims severed from Plaintiff's case in the Northern District of Texas were properly transferred to the various district courts where the claims arose.  There is no basis for this Court to assert jurisdiction over these Defendants, nor to allow Plaintiff to revive these claims here.  Therefore, the claims against Defendants Ross, Morley, and Wooten shall be dismissed without prejudice.

Plaintiff has informed the Court that he has a pending lawsuit in the Northern District of Texas against Big Spring Defendants Beltran, Edenfield, and Martinez (Doc. 1, p. 12 ).  Because

that suit is duplicative of the claims asserted in the instant action against these Defendants, and because this Court does not have jurisdiction over the Big Spring Defendants, the claims against Defendants Beltran, Edenfield, and Martinez shall also be dismissed without prejudice.

**Defendants Maldonado and United States of America**

Plaintiff listed Defendants Maldonado and the United States of America in the caption of his original pleading construed as a complaint (Doc. 1 in Case No. 11-215). However, no allegations against either of these Defendants were stated elsewhere in that pleading. More importantly, Plaintiff did not include these Defendants in the caption, nor did he state any claims against either of them in the operative complaint (Doc. 1 in Case No. 11-450).

Plaintiffs are required to associate specific defendants with specific claims in order to put the defendants on notice of the claims brought against them so they can properly answer the complaint. FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). In addition, neither the federal government nor any of its agencies is amenable to suit in a *Bivens* action. *See FDIC v. Meyer*, 510 U.S. 471, 475; 483-86 (1994) (sovereign immunity shields the federal government from suit absent a waiver; *Bivens* action permits suit only against an individual who is an agent of the federal government). Accordingly, Defendant Maldonado shall be dismissed from this action without prejudice, and Defendant United States of America shall be dismissed with prejudice.

**Disposition**

**IT IS HEREBY ORDERED** that Defendants **MALDONADO, EDENFIELD, MARTINEZ, BELTRAN, WOOTEN, MORLEY,** and **ROSS** are **DISMISSED** from this action without prejudice.  Defendant **UNITED STATES of AMERICA** is **DISMISSED** from this action with prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **LAPPIN, NALLEY,** and **BLEDSOE**; the Clerk shall issue the completed summons.  The United States Marshal **SHALL** serve Defendants **LAPPIN, NALLEY,** and **BLEDSOE** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[4]  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

---

[4]  Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Service shall not be made on the Unknown (John and Jane Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under an obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** 12/19/2011

**s/ G. PATRICK MURPHY**
**U.S. District Judge**