IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANNY GENE WOLFE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:11-cv-215 |
| | ) |
| | ) |
| HARVEY G. LAPPIN, MICHAEL K. | ) |
| NALLEY, BRUCE BLEDSOE, WARDEN | ) |
| JANE DOE, JOHN DOE 1, JOHN DOE 2, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a), the Motion to Dismiss filed by Defendants on April 30, 2012 (Doc. 18), and the Motion for Summary Judgment filed by Defendants on April 20, 2012 (Doc. 19). For the reasons set forth below, it is **RECOMMENDED** that the Motion to Dismiss (Doc. 18) be **DENIED AS MOOT**, the Motion for Summary Judgment (Doc. 19) be **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**, and that the Court adopt the following findings of fact and conclusions of law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

### FINDINGS OF FACT

On December 19, 2011, the Court issued a Memorandum and Order (Doc. 7) outlining the procedural history of this case and the issues and Defendants who will remain after threshold review pursuant to 28 U.S.C. § 1915A. As noted in that Order, the Complaint in this matter was filed in a companion case styled *Wolfe v. Lappin, et al.,* 3:11-cv-450-GPM. That case has since closed – the Complaint and named Defendants having been joined to the matter now before the Court. Plaintiff now proceeds on an Eighth Amendment claim of deliberate indifference to a serious dental need against each of Defendants listed above in the caption. Plaintiff generally claims that from 2004 to 2010 he was denied dentures at the various federal prisons in which he was housed. He states that he requested dentures and appropriate dental care in every facility but that he did not actually receive dentures until August 11, 2010 when he was housed at the Federal Correctional Institution Big Spring in Texas. Plaintiff claims that the two John Doe Defendants are a Chief Dental Officer and a Health Services Administrator who specifically refused to provide Plaintiff dentures while he was incarcerated at the United States Penitentiary Marion. USP Marion's Warden Bledsoe, and his successor Warden Jane Doe, allegedly knew and consented to the actions of the John Doe Defendants. Bureau of Prisons Director Lappin (now retired) and Regional Director Nalley (also retired) allegedly failed to follow policies regarding dental care at USP Marion that directly prevented him from acquiring dentures and also knew that dental care at USP Marion was substandard.[1]

On April 30, 2012, Defendants filed a Motion to Dismiss (Doc. 18) and a Motion for

---

[1] This Court's construction of Plaintiff's claims throughout this Order are drawn from the December 19, 2011 Order (Doc. 7).

Summary Judgment (Doc. 19).  The Motion to Dismiss asserts that this Court has no personal jurisdiction over Defendants Lappin and Nalley.  The Motion for Summary Judgment seeks relief on various grounds: failure to exhaust, failure to state a claim, lack of personal jurisdiction, qualified immunity, and on the merits.

With respect to exhaustion of administrative remedies, Defendants argue that Plaintiff failed to file, and hence exhaust, any administrative remedies while he was housed at USP Marion from October 16, 2007 to April 29, 2009.  Defendants further argue that a subsequent grievance (and related appeals) failed to place Defendants on notice of the claims Plaintiff is making before this Court.[2]  In light of this argument, this Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), on August 22, 2012 in which Plaintiff appeared via videoconference.  The following was determined at that hearing:

Plaintiff filed no grievances while he was housed at USP Marion.  At FCI Big Spring, Plaintiff sought to informally address the fact that he was without a denture on March 22, 2010 (Doc. 19-8, p. 1).  A response noted that Plaintiff had requested to be put on a waiting list for a denture on October 21, 2009 and March 3, 2010 and that "[n]o requests were submitted while in other BOP Institutions" (*Id.* p. 21).  An excerpt of "BOP Program Statement P6400.02 1/15/205"

---

[2] The affidavit of Heather MacConnell, a Legal Secretary for the Consolidated Legal Center of the Bureau of Prisons, was filed by Defendants as Exhibit 5 to the Motion for Summary Judgment (Doc. 19-5).  In this affidavit, and during the August 22, 2012 hearing, Ms. MacConnell indicated that Plaintiff filed "only four requests for administrative remedy."  (Doc. 19-5, ¶ 3).  Initially, the Court believed that the affidavit and testimony indicated that Plaintiff had filed 4 grievances related to separate incidences.  Upon closer examination of the affidavit and the other evidence, it is clear that Plaintiff only filed one grievance, identified as "Remedy ID" or "Case Number" or "Administrative Remedy No." 584306.  This number is further amended by two letters depending on the appeals stage to which the document is related.  Thus, at the Regional Director level, the case number is "584306-RI."  This request for an administrative remedy is discussed in detail below.

3

also was quoted as saying that the BOP is not required to replace missing teeth (*Id.* p. 21). In a formal request for administrative remedy, Plaintiff essentially stated that he was led to believe that he had been on the list at other institutions for years (*Id.* p. 22, identified as case number 584306-F1). Plaintiff further indicated that he does not have access to the policy statement as they are not located at the law library in FCI Big Spring (*Id.* p. 22). In a subsequent appeal, Plaintiff frames his complaint in terms of the length of time he has waited for his dentures, the inadequacy of BOP policies, and the failures of the Warden at FCI Big Spring (*Id.* p. 25). Plaintiff's final appeal to the General Counsel is somewhat hard to read but appears to set forth the same complaints made previously (*Id.* p. 27-28). In response, Harrell Watts, Administrator of National Inmate Appeals, indicated that Plaintiff's dental care is being addressed (*Id.* p. 29). It appears that Plaintiff was provided a denture on August 11, 2010.

Plaintiff testified that he did not file any grievances at USP Marion because he was informed by various people, including a correctional officer, that he would be retaliated against if he filed a grievance. While this reason is listed in his response to the Motion for Summary Judgment, Plaintiff does not support this excuse in his own affidavit (much of which contains inadmissible material) submitted with his response (Doc. 27). In another affidavit submitted by Plaintiff, Michael Eugene Hollis, another inmate at FCI Big Spring, stated that he assisted Plaintiff in filing his grievance (and this lawsuit) in 2010 (Doc. 36). Mr. Hollis indicates that he believed Plaintiff was "nervous about filing grievances" because he had "heard that bad things happen to people who file grievances on the BOP." Mr. Hollis finally indicates that he believes that Plaintiff actually received his dentures because of the grievances that he submitted at FCI Big Spring (Doc. 36, Hollis Aff. ¶ 6).

There is no dispute that Plaintiff did not file any grievances while housed at USP Marion. The Court further finds that Plaintiff's assertion that he was afraid of filing grievances is beyond belief. The tone of Plaintiff's submissions, including his affidavit – which are accusatory, irate, sarcastic, and at times rude and demeaning -- and his demeanor at the hearing do not lead this Court to believe that he is a person who would be intimidated by vague statements that he would be retaliated against if he were to file the appropriate grievances.

## CONCLUSIONS OF LAW

**Legal Standard**

The PLRA provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as

5

stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

Federal prisoners must exhaust administrative remedies by following the guidelines set by the Bureau of Prisons. *See* 28 C.F.R. §542.10 et seq. Generally, an inmate incarcerated in a federal prison must take the following four steps to exhaust his administrative remedies: First, he must attempt to resolve his grievance informally with the prison's staff. 28 C.F.R. §542.13. Second, after trying to resolve his concerns informally, he may submit a written Administrative Remedy Request (Form BP-9) to the Warden. 28 C.F.R. §542.14. These first two steps must be performed within 20 days of the incident about which the inmate complains. *Id.* Third, if his administrative remedy request is denied, he may appeal it to the appropriate Regional Director by submitting a Form BP-10. 28 C.F.R. § 542.15.  And fourth, if the inmate is unsatisfied with the Regional Director's response, he may appeal that decision to the General Counsel (Form BP-11). *Id.* While this four-step process is the normal route an inmate must utilize to exhaust his administrative remedies, if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if his administrative request became known at the institution, he does not have to send his administrative request to anyone at the prison. 28 C.F.R. §542.14.  Instead, he can mark the request "Sensitive," explain why he did not submit his request to the prison, and send it directly to the appropriate Regional Director. *Id.*

**Discussion**

As noted above, Plaintiff did not file any grievances while incarcerated at USP Marion. The Court does not find that administrative remedies were not available based on the hints of retaliation.  *See e.g. Kaba v. Stepp*, 458 F.3d 678, 685-686 (7th Cir. 2006).   Plaintiff only offers

vague testimony of threats of retaliation which the Court does not find credible. Plaintiff also did not employ the procedures located in 28 C.F.R. 542.14(d) wherein he could bypass the institution and file an initial complaint with the Regional Director. There has been no evidence that using this procedure would have resulted in retaliation.

The questions, then, are whether Plaintiff was required to file a grievance at USP Marion and whether the grievance he filed at FCI Big Spring was sufficient to support a finding that he exhausted his administrative remedies. The answers are yes and no, respectively, depending on the Defendant. On a majority of Plaintiff's claims against the USP Marion Defendants, Plaintiff simply failed to timely file a grievance. "When the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited." *Kaba*, 458 F.3d at 684. With respect to other claims, Plaintiff has an obligation to "clearly give[ ] the institution notice of his particular demands and reasonably trigger[] an attempt to resolve them." *McCoy v. Gilbert*, 270 F.3d 503, 512 (7th Cir, 2001). Plaintiff has presented no grievance that would have placed Defendants Lappin, Nalley, or Bledsoe on timely notice of a majority of his claims against them.

Regulations required Plaintiff to submit an Administrative Remedy Request within "20 calendar days following the date on which the basis for the Request occurred." *See Dale*, 376 F.3d at 655 (noting that an administrative complaint must be filed "within 20 days of the underlying event."). With respect to Defendant Bledsoe (and his successor, Warden Jane Doe), Plaintiff claims that he knew about the lack of dental care provided to Plaintiff and that he was instrumental in the complete absence of a dentist at USP Marion. This claim would have accrued the moment that Plaintiff asked to see a dentist but was denied because no dentist was available or

7

was told to wait an inordinate amount of time before being able to see a dentist.[3]  Plaintiff should have been aware of this claim during his 18 month stint at USP Marion.[4]  The Court finds it astonishing that in light of the injuries Plaintiff allegedly suffered, he waited until after he left USP Marion to use the administrative remedy process to seek relief.  Failing to file a timely request for an administrative remedy robs the institution from taking "corrective action [ ] in response to an inmate's grievance [that] might improve prison administration and satisfy the inmate, thereby obviating the need for litigation."  *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Plaintiff also alleges that Defendant Bledsoe (and his successor) intentionally withheld records showing that he already was on the denture waiting list, thus delaying receipt of his dentures at FCI Big Spring.  This claim could only have been available to Plaintiff once he had transferred to FCI Big Spring and was informed that his dental records, and in particular his request to be on the denture waiting list, had not been forwarded.[5]  This claim was included in his March 29, 2010 formal Request for Administrative Remedy once he was informed that he was not on the denture waiting list at other BOP institutions (Doc. 19-8, p. 22: "I have tried to get dentures

---

[3] In his affidavit, Plaintiff states that "USP Marion's own dental hygienist told me three different [times] that there was no dentist . . ." (Doc. 27, p. 5).

[4] This conclusion can also be reached with respect to John Doe Chief Dental Officer and John Doe Health Services Administrator.  Plaintiff claims that these Defendants told him that he would not receive dentures while at USP Marion.  Such a claim accrued when he was told that he would not receive dentures and a subsequent grievance should have been filed within 20 days thereafter.

[5] Defendant cites to their Exhibit 6-A for the proposition that "[w]hen Wholfe transferred to and from Marion, his medical and dental paperwork were transferred with him."  This Exhibit (Doc. 19-10) are merely Plaintiff's medical/dental records.  They do not independently establish that the were transferred with Plaintiff.  The attached affidavit of Captain Donald Ross, Regional Chief Dentist, (Doc. 19-9) also does not establish how and when Plaintiff's records were transferred.  And, Defendant has pointed to no evidence related to when or how Plaintiff's position on the denture waiting list was transmitted to the various institutions.

on other institutions. [sic] I was led to believe I was on the list for years and nothing happened. . . . I came to this unit believing I was still on the list to get dentures."). This claim, therefore, is not subject to dismissal on exhaustion grounds.[6]

With respect to Defendants Lappin and Nalley, this Court finds that Plaintiff failed to exhaust his administrative remedies on most claims. Against these Defendants, Plaintiff claims that they promulgated policies that eliminated reasonable dental care at USP Marion (a violation of policy) and that they knew dental care as USP Marion was inadequate, promulgated other policies that prevented him from bringing his own dentures into prison, and failed to follow policies regarding the transfer of an inmate's place on the denture waiting list when he transferred facilities. With respect to each claim (except the last), Plaintiff should have and could have brought them to the attention of prison officials while at USP Marion. A reasonably diligent Plaintiff would have known that he was not receiving adequate dental care where, as here, he had a significant dental need but was denied appropriate care. A reasonably diligent Plaintiff would have, and should have sought administrative relief when he was denied reasonable dental care and would have been able to assert his policy claims at that point.

With respect to the final claim, that these Defendants failed to follow their own policies with respect to the denture waiting list position being transferred with an inmate, this Court cannot find that Plaintiff failed to exhaust his administrative remedies. As noted above, Plaintiff apparently only became aware of this issue when he did file a grievance at FCI Big Spring. In his grievance, Plaintiff does assert that he questions the entirety of BOP policy with respect to the

---

[6] Defendants have presented no argument that Plaintiff was required to name this Defendant, or the other Defendants, in his grievances. *See Jones*, 549 U.S. at 218-220. Nor could there be any argument that Plaintiff's exhausted claims should be dismissed along with unexhausted claims. *Id.* at 219-224.

denture waiting list (Doc 19-8, p. 25: "I am stating a systematic deficiency of mammoth proportions exists here at FCI Big Spring and frankly throughout the BOP. Four different institutions have promised me my dentures in the last six years."). Therefore, this Court finds that Plaintiff did exhaust his administrative remedies with respect to this discrete claim.[7]

A majority of Plaintiff's claims, if not all, have not been exhausted because Plaintiff failed to file a grievance within the 20 days provided by statute. Plaintiff waited for over 5 years to bring his concerns related to his dentures to the attention of prison authorities. Such delay is patently unreasonable and Plaintiff offers no excuse for the delay except a specious claim that he would be retaliated against and an equally incredible assertion that he was "faithfully beliving [sic] and waiting for dentures" for 6 years and 6 months and that he was trying to be "the 'nice guy'" (Doc. 26, pp. 10-11, 12). At some point (early) in that time period, Plaintiff should have and could have sought relief by filing an appropriate grievance and, if necessary, a more timely lawsuit. If Plaintiff did not sit on his rights he may not have suffered, as he allegedly did, for six-and-a-half years.

## PERSONAL JURISDICTION

Defendants claim that this Court has no personal jurisdiction over Defendants Lappin and Nalley because neither have extensive contacts with Illinois and neither could have anticipated being haled into Court here. Defendants make this claim in the Motion to Dismiss and the Motion for Summary Judgment. In light of the duplication of argument, this Court **RECOMMENDS**

---

[7] The Court notes Defendants have not argued that Plaintiff knew that he was not on the denture waiting list or that he reasonably should have known, prior to his stay at FCI Big Spring. The Court also notes that Defendants have made no argument that Plaintiff should have employed the procedures located in 28 C.F.R. § 542.14(d)(5) or that he should have requested that his grievance be forwarded to USP Marion, or the Bureau of Prisons, itself, for consideration. The Court, therefore, has not addressed these concerns.

10

that the Motion to Dismiss be **DENIED AS MOOT**.

### FINDINGS OF FACT

Harley G. Lappin has presented a declaration stating that he was the Director of the Bureau of Prisons from April, 2003 to May, 2011 (Doc. 18-1, ¶ 1). His office was located in Washington, D.C. and he neither worked nor lived in Illinois (*Id.*). He did not know the Plaintiff, personally made no decisions as to his dental care, and did not personally make any decisions with respect to the hiring of dentists at USP Marion (*Id.* ¶ 4). Michael K. Nalley declares that he served as Regional Director for the North Central Region of the Bureau of Prisons from 2004 to 2011 (Doc. 18-2, ¶ 1). He also did not reside or work in Illinois (*Id.*). He states that he had no specific knowledge of a dentist on staff at USP Marion nor was he involved in recruiting dentists for facilities in his region (*Id.* ¶ 3). He also was not familiar with Plaintiff and he did not personally make any decisions with respect to his dental care (*Id.* ¶ 4).

### CONCLUSIONS OF LAW

Plaintiff has the burden of showing that the requirements of personal jurisdiction are met. Plaintiff must show both that the Defendants are "amenable to process under an appropriate statute, and that it is consistent with due process to require them to submit to litigation in an Illinois Court." *Kinslow v. Pullara*, 538 F.3d 687, 690 (7th Cir. 2008). Defendants do not appear to be contesting process. Plaintiff must therefore make a showing that Defendants "have minimum contacts with [this forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In particular:

> Those contacts may not be fortuitous. Instead, the defendant must have purposefully established minimum contacts within the forum State before personal

11

>jurisdiction will be found to be reasonable and fair. Crucial to the minimum contacts analysis is a showing that the defendant should reasonably anticipate being haled into court in the forum State, because the defendant has purposefully availed itself of the privilege of conducting activities there. *Kinslow*, 538 F.3d at 691 (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002).

Defendants have presented evidence that they did not reside and work in Illinois, that they had no knowledge of Plaintiff's case or his dental needs, and that they made no decisions with respect to the dental care that Plaintiff received at USP Marion. They also indicate that day-to-day operations of institutions, like USP Marion, and its staffing needs were delegated to the Wardens of those respective institutions. These facts certainly are sufficient to show that neither Lappin nor Nalley could have anticipated being haled into an Illinois Court on those claims. However, Plaintiff is making the claim, as indicated above, that Nalley and Lappin promulgated and enforced (or failed to enforce, as the case may be) a policy regarding the transfer of medical records, and specifically an inmate's placement on a denture waiting list, in violation of his Eighth Amendment Rights. In light of this claim, it is important to determine whether it would be "fundamentally fair to require the defendant to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781 (7th Cir. 2003) (emphasis in original).

Neither Plaintiff nor Defendants fully address this issue which hampers this Court's consideration of this claim. Plaintiff does, however, argue, in various places, that Lappin and Nalley instituted policies regarding the transfer of medical files when inmates are transferred between facilities. Plaintiff also argues that these Defendants personally promulgated policies regarding the denture waiting list and the transfer of an inmate's position on that list when he is transferred to a new facility. Each of these policies directly effected Plaintiff's ability to timely

12

receive dental care and these Defendants' personal failure to enforce these policies with respect to Plaintiff ultimately led to an alleged Eighth Amendment violation. While Defendants themselves made no personal decisions as to Plaintiff's actual dental care, they did establish the policies and enforced/failed to enforce those policies in a way that directly affected an inmate housed in Illinois. Therefore, these Defendants had sufficient minimal contacts with Illinois to make it foreseeable that they could be haled into this Court.

## QUALIFIED IMMUNITY AND MERITS

Defendants' arguments related to qualified immunity and the merits do not address the claims that may remain in this case in light of the findings and conclusion made above. It is therefore **RECOMMENDED** that these issues be re-briefed once the District Court has ruled on this Report and Recommendation.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that all claims against Warden Bledsoe/Jane Doe be **DISMISSED WITH PREJUDICE** for the failure to exhaust administrative remedies except the claim that these Defendants "interfered with his ability to obtain dentures in a timely manner after his next transfer to Big Spring in Texas, because they did not forward the records showing that Plaintiff had already been on a waiting list to receive dentures before his transfer" (Doc. 7, p. 9). It is **RECOMMENDED** that this claim be labeled Count 1 in any future pleadings.

It is further **RECOMMENDED** that all claims against Director Lappin and Regional Director Nalley be **DISMISSED WITH PREJUDICE** for the failure to exhaust administrative remedies except the claim that these Defendants failed to enforce or follow the policy that "an

13

inmate who is on a waiting list for medical services such as dentures, is to maintain his place on that list when he is transferred to a different institution" (Doc. 7, p. 10).  It is **RECOMMENDED** that this claim be labeled Count 2 in any future pleadings.

It is further **RECOMMENDED** that the Motion to Dismiss (Doc. 18) be **DENIED AS MOOT**, that the Motion for Summary Judgment (Doc. 19) be **GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART**, that the parties be permitted to re-brief the qualified immunity and merits arguments, and that the Court adopt the foregoing Findings of Fact and Conclusions of Law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: January 16, 2013**

**DONALD G. WILKERSON**
**United States Magistrate Judge**